CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Escanaba and Lake Superior Railroad Company and Soo Line Railroad Company, Petitioners,

v.

UNITED STATES of America and Interstate Commerce Commission, Respondents,

A. Lindberg & Sons, Inc., Intervening Respondent.

No. 77–1245.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1977.

Decided April 21, 1978.

Christopher A. Mills, Chicago and North Western Transp. Co., Chicago, Ill., for petitioners.

Mark L. Evans, Gen. Counsel, and Christine N. Kohl, I.C.C., Washington, D. C., Aaron Lowenstein, Negaunee, Mich., for respondents.

Before SPRECHER and TONE, Circuit Judges, and GRANT, Senior District Judge.*

TONE, Circuit Judge.

The petitioning railroads ask us to set aside an order of the Interstate Commerce Commission finding them to have exacted freight rates that violated § 2 of the Interstate Commerce Act, 49 U.S.C. § 2, and ordering reparations in the amount of $66,886.78, plus interest, to be paid to the intervening respondent. We affirm on the ground that the issues presented were decided by a federal court of coordinate status in an earlier appeal in this same case, *A. Lindberg & Sons, Inc. v. United States,* 408

F.Supp. 1032 (W.D.Mich.1976) (3-judge court), and, therefore, the doctrine of law of the case forecloses reconsideration of these issues by us.

*The Facts.*

In 1970 A. Lindberg & Sons, Inc., entered into a subcontract to build a watertight lining for a sediment pond, which was part of a paper mill project in Groos, Michigan. For this purpose Lindberg ordered 8,720 tons of bentonite clay, which was shipped from Belle Fourche, South Dakota, to Groos over the lines of the three petitioning railroads. Lindberg paid the railroads' published point-to-point freight rate for the bentonite shipments.

During this same period, a substantially lower freight rate on bentonite clay was in effect for shipments to iron ore pelletizing plants located in Wisconsin, Minnesota, and the Upper Peninsula of Michigan. One of these plants is in Marquette County, Michigan, approximately 50 miles east of Groos and on the same railroad line. This plant is therefore 50 miles further from the shipping point than Groos. The shipments to both destinations were transported together in the same type of car and in the same quantities per car. Because of the disparate rates, Lindberg's freight costs for the bentonite movements were higher than those for shipments to the Marquette plant or the other iron ore plants.[1]

*Prior Proceedings.*

Lindberg filed a complaint before the Interstate Commerce Commission alleging that the rates charged it were unjust and unreasonable, unjustly discriminatory, and unduly prejudicial and preferential, in violation of §§ 1, 2, and 3 of the Interstate Commerce Act, 49 U.S.C. §§ 1, 2, and 3. Following proceedings under the Commission's "modified procedure" whereby all evi-

---

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

1. The rates to iron ore plants in all three destination states were equalized without respect to distance.

dence was adduced in writing,[2] the hearing examiner denied relief on all counts. The decision was affirmed, with minor modifications, by I.C.C. Review Board Number 4, and thereafter by I.C.C. Division 2, acting as an Appellate Division. So far as Lindberg's rate discrimination claim under § 2 was concerned, the Commission denied relief because (1) the rates related to shipments to two different destination points; (2) Lindberg was not in competition with the iron ore pelletizing plants; (3) the different rates could be attributed to entirely different rate structures, *viz.,* the Lindberg rate was pursuant to a point-to-point single movement rate, whereas the lower rate available to the iron ore plants was pursuant to a "proportional" rate; and (4) the lower rate for the iron ore plants was justified because the plants were faced with a threat of foreign competition for their services.

At that time, former 28 U.S.C. § 2325 (repealed by Pub.L. 93–584, § 7, 88 Stat. 1917 (1975)) required that an action to review an order of the Commission be heard by a three-judge district court. Lindberg brought such an action in the Western District of Michigan, where it has its principal place of business.

The three-judge court affirmed the Commission with respect to Lindberg's § 1 and § 3 claims. With respect to the § 2 claim, however, the order was vacated and the proceeding was remanded to the Commission for further proceedings not inconsistent with the court's opinion. *A. Lindberg & Sons, Inc. v. United States, supra,* 408 F.Supp. at 1044. Although the court invited the parties to offer additional evidence on remand, see *id.* at 1042, and the case was accordingly "reopened for further consideration" by an order of the Commission, no additional evidence was offered.

After reconsideration of the case in compliance with the court's mandate, the full Commission ordered the railroads to pay Lindberg reparations premised upon a finding that the rate charged Lindberg was unjustly discriminatory in violation of § 2. *A. Lindberg & Sons, Inc. v. Chicago and N. W. Transportation Co.,* 353 I.C.C. 283 (1977). That order of the Commission is now before us for review on the petition of the railroads pursuant to 28 U.S.C. § 2321 (as amended by Pub.L. 93–584, § 5, 88 Stat. 1917 (1975)).

*The Railroads' Arguments.*

The railroads assail the order on four grounds, all of which were dealt with in the opinion of the three-judge court:

*First.* The railroads attack the Commission's determination that § 2 was violated notwithstanding the fact that the destination of shipment was not identical to the destinations of the shipments to iron ore plants. The railroads argue that, as a matter of law, § 2 only applies when the differing rates are applied to shipments to the same destination point. The three-judge court, however, categorically rejected this interpretation of § 2, holding that the Commission had erred in adopting it, that the words "substantially similar circumstances and conditions" in § 2 do not require identical destinations, and that "whether the shipments in question were made under substantially similar circumstances and conditions is a question of fact for the Commission to decide." 408 F.Supp. at 1041.

*Second.* The railroads argue that § 2 can be violated only if competitive harm is shown, and that because of the absence of competition between Lindberg and the pelletizing plants such harm could not occur. But the three-judge court also met this argument, holding "it was error for the Commission to hold that a violation of § 2 could only be found where a discrimination between competitors was shown." 408 F.Supp. at 1041.[3]

---

2. See Rules 45–54, inclusive, Commission's General Rules of Practice, 49 C.F.R. §§ 1100.-45–54 (1977).

3. The extent to which the shippers compete might, of course, have a significant effect on the reparations ordered, as the three-judge court noted. 408 F.Supp. at 1042. The railroads have not challenged the theory on which the Commission ordered reparations, however.

*Third.* The railroads argue that the rate to pelletizing plants was "a proportional rate whereas the [Groos] rate is not." They continue,

> The inbound bentonite clay rate to the pelletizing plants is dependent upon the plants shipping outbound pellets to the steel mills by rail; the rate to Groos is not dependent on any further shipments outbound from Groos.

They go on to say that "[a] difference such as this in the ultimate destinations [sic] involved" is a difference in transportation circumstances that justifies a difference in rates.[4] Several variations on this proportional rate argument were presented to the three-judge court. That court rejected the argument insofar as it was based on the record before it but left the door open for additional evidence. 408 F.Supp. at 1045. As we have said, no additional evidence was offered.

*Fourth.* The railroads also argue that the preferred rate offered the pelletizing plants was justified because of the threat of foreign competition that was allegedly facing the iron ore pelletizers. The three-judge court, however, again looking at the same evidence that is now before us, rejected this argument as unsupported by that evidence, branding the argument as "pure conjecture." 408 F.Supp. at 1043.

Thus all of the railroads' arguments were decided adversely to them in the earlier appellate review of the same proceeding.

*Law of the Case.*

■ Appellate reconsideration of issues that have already been decided in an earlier appeal is ordinarily foreclosed by the doctrine of law of the case. *Evans v. Buchanan,* 555 F.2d 373, 377 (3rd Cir.), *cert. denied,* 434 U.S. 880, 98 S.Ct. 235, 54 L.Ed.2d 160 (1977); *Rodman v. C.I.R.,* 548 F.2d 1109, 1110–12 (2nd Cir.), *cert. denied,* 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977); *Lehrman v. Gulf Oil Corp.,* 500 F.2d 659, 663 (5th Cir. 1974), *cert. denied,* 420 U.S.

929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975); *Petition of United States Steel Co.,* 479 F.2d 489, 493–494 (6th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973); *Drinan v. A. J. Lindemann & Hoverson Co.,* 238 F.2d 72, 74 (7th Cir. 1956); *cf. Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1294 (7th Cir.), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976); see generally, 1B Moore's Federal Practice ¶ 0.404[1]–[10] (1965); Vestal, Law of the Case: Single-Suit Preclusion, 1967 Utah L.Rev. 1. The Supreme Court has described this doctrine as follows:

> When matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court. Thus a cause proceeds to a final determination. While power rests in a federal court that passes an order or decision to change its position on a subsequent review in the same cause, orderly judicial action, except in unusual circumstances, requires it to refuse to permit the relitigation of matters or issues previously determined on a former review.

*Insurance Group Committee v. Denver & R. G. W. R. R.,* 329 U.S. 607, 612, 67 S.Ct. 583, 585, 91 L.Ed. 547 (1947) (footnote omitted).

■ Courts have applied the doctrine of law of the case to administrative proceedings. *E. g., City of Cleveland, Ohio v. FPC,* 182 U.S.App.D.C. 346, 348–349, 561 F.2d 344, 346–347, 348 (1977); *In re New York, New Haven and Hartford Ry. Co.,* 304 F.Supp. 793, 801 (D.Conn.1969), *aff'd in part, rev'd in part on other grounds,* 399 U.S. 392, 90 S.Ct. 2054, 26 L.Ed.2d 691 (1970); see *Retail Clerk's Union, Local 1401 v. N.L.R.B.,* 149 U.S.App.D.C. 370, 376, 463 F.2d 316, 322 (1972); and see generally 1B Moore's Federal Practice ¶ 0.403 at 354–356; *cf. United Gas Improvement Co. v. Continental Oil Co.,* 381 U.S. 392, 404–406, 85 S.Ct. 1517, 14 L.Ed.2d 466 (1965) (doctrine not applicable under peculiar circumstances before Court). In the case at bar, the Com-

---

4. The argument as to different destination points having already been covered in the brief (see *First, supra* ), we assume it was the writ-

er's intention to refer to the difference described in the indented quotation.

mission does not assert that doctrine as a basis for approval of its order. Its reticence on this point results, we learned at oral argument, from a fear that applying the doctrine in a case such as this might somehow subvert the rule that ordinarily a court may not direct an administrative agency to reach a particular result but may only determine an error of law and remand to the administrative agency for further proceedings.[5] *FPC v. Idaho Power Co.,* 344 U.S. 17, 20, 73 S.Ct. 85, 97 L.Ed. 15 (1952); *NLRB v. Food Store Employees' Union, Local 347,* 417 U.S. 1, 10, 94 S.Ct. 2074, 40 L.Ed.2d 612 (1974). This limitation, however, does not preclude the application of the doctrine of the law of the case in reviews of administrative orders but merely shapes that application. If the railroads were arguing before us that new findings of fact were necessitated by the three-judge court's decision as to the controlling legal principles, and those new findings were not supported by substantial evidence, that argument would not be precluded on the second judicial review. But that is not the railroads' argument. They argue that the legal determinations of the three-judge court, either as to the controlling legal principles or as to the sufficiency of the evidence relevant to those principles, was wrong. These arguments are foreclosed by the doctrine of law of the case.

■ An administrative agency is bound on remand to apply the legal principles laid down by the court, *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 145, 60 S.Ct. 437, 84 L.Ed. 656 (1940); *Morand Bros. Beverage Co. v. NLRB,* 204 F.2d 529, 532–533 (7th Cir. 1953), as the Commission did here. It would be strange indeed to decide now that the Commission erred in obeying the mandate of the earlier court of coordinate jurisdiction in this case. The doctrine of law of the case is designed to prevent such a result.

The fact that the earlier review was by a different court does not alter our conclusion. If anything, that fact makes the case for application of the doctrine even stronger, for principles of comity come into play. If we now held that the Commission erred in obeying the mandate of the three-judge court, a third court [6] reviewing the Commission's order following our remand might hold that we in turn were wrong. That result would be prevented only by the same doctrine of law of the case, aided by principles of comity, see *Gulf Research & Development Co. v. Schlumberger Well Surveying Corp.,* 98 F.Supp. 198, 200–201 (D.Del.), *petition for mandamus denied sub nom. Gulf Research & Development Co. v. Leahy,* 193 F.2d 302 (3rd Cir. 1951), *aff'd per curiam by an equally divided Court,* 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668 (1952); see generally, *Hoffman v. Blaski,* 363 U.S. 335, 345, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1969) (Frankfurter, J., dissenting), that should govern us now.

■ Law of the case should therefore apply unless there are unusual circumstances, or a "compelling reason," *Dale v. Hahn,* 486 F.2d 76, 81 (2d Cir. 1973), *cert. denied,* 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974), that would render the doctrine inapplicable. These include (1) substantial new evidence introduced after the first review, (2) a decision of the Supreme Court after the first review that is inconsistent with the decision on that review, and (3) a conviction on the part of the second reviewing court that the decision of the first was clearly erroneous. See, *e. g., Diplomat Electric, Inc. v. Westinghouse Electric Supply Co.,* 430 F.2d 38, 48 (5th Cir. 1970); *Petition of United States Steel Corp., supra,* 479 F.2d at 494; *White v. Murtha,* 377 F.2d 428, 431–432 (5th Cir. 1967); *Drinan v. A. J. Lindemann & Hoverson Co., supra,* 238 F.2d at 74.

---

5. The administrative tribunal is free on remand to reach the same result on different grounds. Compare *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (*Chenery I*), with *SEC v. Chenery Corp.,* 332 U.S. 194, 200, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) (*Chenery II*).

6. The Sixth Circuit could review the case under the multiple venue provisions of 28 U.S.C. § 2343.

No new evidence was offered, as we have already noted, and there is no claim of a pertinent intervening Supreme Court decision. Turning to the third possible reason, we cannot say that the three-judge court's decision was clearly erroneous. Although we might have reached a different result, that court's opinion was carefully reasoned, and the issues could reasonably have been decided either way. We cannot say the opinion is inconsistent with the decisions of the Supreme Court interpreting § 2, e. g., *Ayrshire Collieries Corp. v. United States,* 335 U.S. 573, 69 S.Ct. 278, 93 L.Ed. 243 (1949); *United States v. Wabash Ry. Co.,* 321 U.S. 403, 64 S.Ct. 752, 88 L.Ed. 827 (1944); *ICC v. Baltimore & Ohio Ry. Co.,* 225 U.S. 326, 32 S.Ct. 742, 56 L.Ed. 1100 (1912). We accordingly find no compelling reason to abrogate the decision of the three-judge court.[7]

ENFORCED.

See also, 7 Cir., 577 F.2d 746.

---

**7.** Lindberg's "Cross-petition for Review," seeking a higher rate of interest to be compounded on the reparations, has already been dismissed as untimely by a motion panel of this court.

We adhere to that decision. *Chem-Haulers, Inc. v. United States,* 536 F.2d 610, 613–614 (5th Cir. 1976).