## NEIL F. PAGANO *v.* BOARD OF EDUCATION OF THE CITY OF TORRINGTON
### (2800)
### (2805)

DUPONT, C.P.J., BORDEN and SPALLONE, Js.

Argued February 5—decision released May 14, 1985

*Maxwell Heiman,* with whom were *Louis P. Kocsis* and, on the brief, *William J. Tracy, Jr.,* for the appellant-appellee (plaintiff).

*William H. Narwold,* for the appellee-appellant (defendant).

BORDEN, J. These two combined appeals arise out of the efforts of the defendant, the Torrington board of education, to terminate the teaching contract of the plaintiff, Neil F. Pagano, a tenured teacher. In Appeal No. 2800, Pagano appeals from the judgment of the trial court dismissing his administrative appeal from the decision of the board. That decision was to terminate his teaching contract. Pagano also sued the board for damages for wrongful discharge. In Appeal No. 2805, he appeals from the judgment of the trial court awarding him an amount of damages less than he sought; the board cross appeals, claiming that he is not entitled to any damages. Because we find one over-arching claim of the board dispositive of both

cases, we find no error on Pagano's appeals in both cases and error on the board's cross appeal in the damages action.

I

The administrative appeal case is the second phase of an earlier administrative appeal. The facts are not in dispute. In 1979, as a result of complaints by several female high school students and an investigation by the superintendent of schools, the board notified Pagano that it was considering terminating his contract for moral misconduct. Pagano requested that the charge be heard by an impartial hearing panel. See General Statutes § 10-151. After a hearing, the panel found the charge proved but recommended a reprimand and suspension rather than termination. Upon receipt of the hearing panel's report, the board met and unanimously voted to terminate Pagano's contract of employment. Pagano appealed that decision to the Superior Court. By decision dated April 15, 1982, the court, *J. Healey, J.*, correctly noted that, although the board was bound by the panel's factual findings, it was not bound by the panel's recommendation as to disposition. See *Petrino* v. *Board of Education,* 179 Conn. 428, 430, 426 A.2d 795 (1980). Rejecting all but one of Pagano's attacks on the decision of the board, the court, relying on *Goldberg* v. *Kelly,* 397 U.S. 354, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970), held that, because the board refused to permit Pagano or his attorney to address it orally prior to its determination as to disposition, Pagano was deprived of due process of law in that respect. The court set aside the termination and remanded the matter to the board for further proceedings in accordance with law. Both sides sought certification for appeal to the Supreme Court, which was denied.[1]

---

[1] At that time, appeals to the Supreme Court from decisions of the trial court in administrative appeals were only by a petition for certification. General Statutes (Rev. to 1983) § 51-197f.

The board notified Pagano of a special meeting to be held on April 29, 1982, to discuss this case and other pending litigation between Pagano and the board. Pagano notified the board that he would not attend that or any other meeting of the board. At the meeting, the board voted to hold another meeting to permit Pagano and his attorney to attend and speak, at which time it would consider appropriate action.

On July 21, 1982, the board notified Pagano of a meeting to be held on July 26, 1982, at which he could present argument as to the disposition of his contract. On July 26, 1982, Pagano and his attorney attended the meeting. Instead of presenting argument, however, Pagano's attorney asked for a roll call of the board, challenged its jurisdiction, asserted that Pagano's civil rights had been violated, and told the board that it could do whatever it desired and he would see them in court. The board thereupon went into executive session to consider again the hearing panel's report. Upon its return, the board again voted to terminate Pagano's contract.

Pagano appealed again to the Superior Court. The major thrust of his appeal was that the board had predetermined its decision to terminate prior to the meeting of July 26, 1982, and that it was unconstitutionally biased. The trial court, *Kline, J.,* permitted Pagano to examine, over the objection of the board, the individual board members on the issue of predetermination and bias. The court decided that the termination of July 26, 1982, was proper and dismissed Pagano's appeal.

The damages action case was tried together with the administrative appeal. It was based on a stipulation of facts. The stipulation recited the history of the case, Judge Healey's decision, and the decision in another case in which Judge Healey held that Pagano was not entitled to unemployment benefits. The parties also

stipulated to the amount that Pagano would have earned as a teacher during the years in question and to that which he earned while employed outside the teaching profession.

Judge Kline considered Pagano's complaint as one for damages for wrongful discharge. It ruled that, because the purported termination in 1979 had been set aside by Judge Healey's decision, Pagano was not properly terminated until July 26, 1982. It awarded him damages equal to the amount he would have earned as a teacher less that which he did earn otherwise.

## II

We find it unnecessary to discuss Pagano's various claims on his appeals in the two cases; nor is it necessary to discuss any but one of the board's claims on its cross appeal in the damages action. This is because one claim of the board, offered as an alternate ground to affirm the judgment of the trial court in the administrative appeal and as a ground of its cross appeal in the damages action, is dispositive of both cases. That claim is essentially that, despite Judge Healey's decision to the contrary in the first phase of the administrative appeal, the termination of Pagano by the board in 1979 did not violate his due process rights, as indicated by the decision in *Jones* v. *Morris,* 541 F. Sup. 11 (S.D. Ohio 1981), aff'd, 455 U.S. 1009, 102 S. Ct. 1699, 72 L. Ed. 2d 127 (1982). We conclude, moreover, that under the circumstances of these cases the doctrines of law of the case, collateral estoppel and res judicata do not require us to afford finality to that decision of Judge Healey.

We note, first, that the denial by our Supreme Court of the board's petition for certification for appeal from the judgment rendered by Judge Healey does not necessarily indicate approval of either the result reached or the opinion rendered by him. *State* v. *Doscher,* 172

Conn. 592, 376 A.2d 359 (1977). We also note that the effect of *Jones* v. *Morris,* supra, was raised in the trial court before Judge Kline, was stated in the board's preliminary statements of issues on appeal in both the administrative appeal case and the damages action case, and was fully briefed by both parties in this court.

In *Jones* v. *Morris,* supra, pursuant to Ohio's teacher termination statutory scheme, which was similar to General Statutes § 10-151, an impartial referee after a full hearing found certain charges against a tenured teacher to be proved and recommended to the local board that the teacher's employment be terminated. The board accepted the recommendation and terminated his employment without giving him further notice or an opportunity to argue or object to the board regarding the findings or recommendations of the referee. The teacher sued the board under 42 U.S.C § 1983 for violation of his claimed due process right to object to the referee's decision. A three judge federal panel rejected his claim, holding that due process required only that he be afforded a full, trial-type hearing before the referee, but did not require that he also be afforded the right to argue to the board as the ultimate decision-maker, which could base its decision on the referee's report. The teacher argued that *Goldberg* v. *Kelly,* supra, required that he be given the right to appear before the board and to present his arguments before it made its ultimate decision. *Jones* v. *Morris,* supra, 18. The court rejected that argument. Quoting from *Mathews* v. *Eldridge,* 424 U.S. 319, 349, 96 S. Ct. 893, 447 L. Ed. 2d 18 (1975), the seminal case on administrative due process, it stated: " *'The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and an opportunity to meet it. . . . " All that is necessary is that the procedures be tailored, in light of the decision to be made, to "the capacities and circumstances*

*of those who are to be heard, . . ."* to insure that they are given a meaningful opportunity to present their case.' [Citations omitted] . . . *Mathews* [v. *Eldridge, supra,* 349].

"In the instant case, of course, Jones had the opportunity to appear personally with counsel for a full, trial-type evidentiary hearing either before the Board, the final decisionmaker, or a neutral hearing officer, prior to the termination of his employment. Jones appeared before the referee by his own choice. The case law is clear that such a hearing officer may report to the final decisionmaker on the evidence received, and the decisionmaker may base his decision on the referee's report. The additional procedural safeguard which Jones asserts he is due is an opportunity to make an oral or written objection to the hearing officer's decision; in essence, a procedure similar to that of a judicial appeal from the decision of the trial court as to findings of fact. . . .

"What is required, under the criteria of *Mathews* v. *Eldridge,* are procedures that will insure fairness in administrative action. *Id.* 424 U.S. at 348, 96 S. Ct. at 909. Using the criteria of *Mathews* we conclude that the present procedures are fair, and the additional procedures demanded by Jones are unnecessary to insure minimal constitutional due process. . . . The board's decision, that the referee's findings constitute sufficient cause to terminate a teacher, is an act within their particular expertise, which, however, is also subject to review if not supported or warranted by the evidence adduced at the hearing. . . . Thus, it is doubtful if Jones' proposed procedural safeguard of interposing his objections between the referee's findings of fact and the board's ultimate decision on the 'legal' consequences of that act would be of great value in lessening the already minimal risk of an unfair termination. . . .

"The additional procedural safeguards requested by Jones would be of little, if any, value in minimizing any risk of an unfair deprivation of Jones' property interest in his continuing teaching contract. In fact, under similar factual situations, courts have held that such procedures are not constitutionally required. *Perry* v. *Sinderman,* [408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1982)]; *Bates* v. *Sponberg,* [547 F.2d 325 (6th Cir. 1976)]." (Emphasis in original.) *Jones* v. *Morris,* supra, 19–21.

On March 22, 1982, approximately three weeks before Judge Healey's decision in this case, the United States Supreme Court summarily affirmed the judgment of the three judge panel. *Jones* v. *Morris,* 455 U.S. 1009, 102 S. Ct. 1699, 72 L. Ed. 2d 127 (1982). Although the precedential value of such a summary affirmance has been the subject of some disagreement among the justices of the United States Supreme Court; see 12 Moore, Federal Practice 400.05-1; in general it is regarded as a decision on the merits and binding on lower courts. Id.

We are persuaded by the reasoning of the three judge panel in *Jones* v. *Morris,* supra, and that persuasion is buttressed by the affirmance of the panel's judgment by the Supreme Court. Just as in *Jones* v. *Morris,* supra, Pagano's right to due process was fulfilled by the full, trial-type evidentiary hearing held before the impartial hearing panel, the procedure he selected pursuant to General Statutes § 10-151. That procedure gave him the full opportunity to meet the case against him and to present his own case. *Mathews* v. *Eldridge,* supra. Once the hearing panel made its factual report and recommendation as to disposition, the board was bound by the panel's factual findings, but not by its legal conclusions or its recommendations. *Petrino* v. *Board of Education,* supra. As to termination, " '[t]he jurisdiction and discretion to determine what . . .

may be [due and sufficient cause] rests in the hands of the school authorities.' *Tucker* v. *Board of Education,* 177 Conn. 572, 578, 418 A.2d 933 (1979)." *Petrino* v. *Board of Education,* supra. Although that discretion is not unfettered; see *Tucker* v. *Board of Education,* supra, 580–82; it does involve a decision within the board's particular expertise. *Jones* v. *Morris,* supra, 20. Due process does not require, however, that after a full evidentiary hearing on the merits, with a full factual report to the board, the teacher be given an opportunity orally to address the board before it exercises that discretion. *Jones* v. *Morris,* supra; *Jones* v. *Board of Education,* 60 Ohio App. 2d 138, 395 N.E.2d 1337 (1978).[2]

The analogy, relied on by Judge Healey, to the convicted criminal defendant's right of allocution before the imposition of sentence is inapt. Although such a right is certainly within the power of the legislature to fashion, which it has not done; see footnote 2, supra; the constitution does not impose it on a board of education. "We reiterate the wise admonishment of Mr. Justice Frankfurter that differences in the origin and function of administrative agencies 'preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts.' " *Mathews* v. *Eldridge,* supra, 348. All that due process requires is that a person in jeop-

---

[2] Although Judge Healey's decision rested solely on due process grounds, we note that the statute, General Statutes § 10-151, does not appear to contemplate a further hearing before the board after the report of the impartial hearing panel. It provides in pertinent part: "Within fifteen days after the close of the hearing before an impartial hearing panel, unless the parties mutually agree to an extension, such panel shall submit in writing its findings and a recommendation to the board of education as to the disposition of the charges against the teacher, and shall send a copy of such findings and recommendation to the teacher. The board of education shall give the teacher concerned its written decision within fifteen days of receipt of the written recommendation of the impartial hearing panel."

ardy of serious loss has notice and a meaningful opportunity to meet the case against him and to present his case, and that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those to be heard. Id., 348–49.

We conclude, therefore, that Pagano's appeal from the decision in his administrative appeal is without merit. Also, since the conclusions of Judge Kline in the damages action, that Pagano was wrongfully discharged in 1979 and was thus entitled to damages until the proper termination in 1982, were based on Judge Healey's earlier ruling, those conclusions cannot stand.

## III

Nor do the traditional doctrines concerning the finality of judgments require that the first decision of the trial court, holding that Pagano's rights were violated in 1979, must stand. Although the administrative appeal case before Judge Kline was a separate case with a separate docket number from that before Judge Healey, functionally the second appeal was a continued, second phase of the first. Under these circumstances, the doctrine of law of the case, rather than collateral estoppel or res judicata, comes into play. See *Chicago & North Western Transportation Co.* v. *United States*, 574 F.2d 926 (7th Cir. 1978) (applying law of the case to second appeal from second ruling of administrative agency, after intervening judicial remand to the agency).

"The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be involved. See 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478. In essence it expresses the practice of judges generally to refuse to reopen what has already been decided and is not a

limitation on their power." *Breen* v. *Phelps,* 186 Conn. 86, 99, 439 A.2d 1066 (1982). It has less force at the appellate level than in the trial court. Id., 100.

Even at the appellate level, however, "[l]aw of the case should . . . apply unless there are unusual circumstances, or a 'compelling reason,' *Dale* v. *Hahn,* 486 F.2d 76, 81 (2d. Cir. 1973), cert. denied, 419 U.S. 826, 95 S. Ct. 44, 42 L. Ed. 2d 50 (1974), that would render the doctrine inapplicable. These include (1) substantial new evidence introduced after the first review, (2) a decision of the Supreme Court after the first review that is inconsistent with the decision on that review, and (3) a conviction on the part of the second reviewing court that the decision of the first was clearly erroneous." *Chicago & North Western Transportation Co.* v. *United States,* supra, 930; see also *United States* v. *Fernandez,* 506 F.2d 1200, 1203 n.7 (2d Cir. 1974), explaining *Johnson* v. *Cadillac Motor Car Co.,* 261 F. 878 (2d Cir. 1919); *Zdanok* v. *Glidden Co., Durkee Famous Foods Division,* 327 F.2d 944, 950–51 (2d Cir. 1964); *Bowles* v. *Good Luck Glove Co.,* 150 F.2d 853, 854 (7th Cir. 1945), cert. denied, 326 U.S. 794, 66 S. Ct. 484, 90 L. Ed. 483 (1946); see generally annot., 87 A.L.R.2d 271. We believe that factors (2) and (3) both apply here.

It is true that the decision of the United States Supreme Court summarily affirming the three judge panel in *Jones* v. *Morris,* supra, was made about three weeks before Judge Healey's decision. There is no indication, however, that either he or the parties were aware of that decision at that time, and the nature of its publication can hardly command a conclusion that they be charged with notice of it. Thus, functionally it was an intervening decision of the Supreme Court after the first judicial review of the board's 1979 termination decision. Furthermore, as the first appellate

court fully to review the constitutional merits of Judge Healey's decision, we are convinced that it was clearly erroneous.[3] See *Jones* v. *Morris, supra.*

We therefore conclude that the trial court, *Kline, J.,* in this case did not err in dismissing Pagano's administrative appeal, although we rest our decision on a ground different from that used by the trial court. *Bencivenga* v. *Zoning Board of Appeals,* 2 Conn. App. 384, 387, 478 A.2d 1049 (1984). We also conclude that, in the damages action, the trial court erred by awarding any damages to Pagano, since we conclude that Pagano was not wrongfully discharged in 1979.

In Appeal No. 2800, there is no error. In Appeal No. 2805, there is no error on the appeal; there is error on the cross appeal, the judgment for the plaintiff is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.

---

[3] Cf. *Kern* v. *Contract Cartage Co.,* 55 Ohio App. 481, 484–85, 9 N.E.2d 869 (1936): "It seems apparent that if [the superior] court committed prejudicial error in determining the law of the case for the guidance of the [board of education] upon remand, and if we should now adhere to such erroneous determination, the Supreme Court, *as the court of last review,* would reverse the judgment resulting from such erroneous determination [even though it previously refused to review the case] . . . . It necessarily follows that if [the superior] court erred in its former determination . . . we are not bound thereby but have the duty in furtherance of substantial justice between the parties to now make [a] proper determination . . . . "