Monte HAND, on behalf of himself and all others similarly situated, Plaintiff-Appellant,

v.

CENTRAL TRANSPORT, INC., d/b/a Mohawk Motor, Inc. and Central Cartage, Inc., and Mohawk Motor, Inc., Defendants-Appellees.

No. 84–3850.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 7, 1985.

Decided Dec. 3, 1985.

Rick Drake, argued, Chagrin Falls, Ohio, for plaintiff-appellant.

David M. Schnorf, Schnorf, Wanic, Loyd & Engwert, Toledo, Ohio, Patrick A. Moran, Simpson & Moran, Birmingham, Mich., Vivan B. Perry, argued, for defendants-appellees.

Before JONES, Circuit Judge, WEICK and PECK, Senior Circuit Judges.

PER CURIAM.

Plaintiff Monte Hand appeals the summary dismissal of his anti-trust claims brought under section 1 of the Sherman Act and section 4 of the Clayton Act, 15 U.S.C. §§ 1 and 15 (1982), against the above named defendants (collectively referred to as "Mohawk"). In his complaint, Hand alleged that Mohawk violated the antitrust laws by "tying" the financing of tractor-trailer trucks with the acceptance of Mohawk's offer of employment. Mohawk filed a first motion for summary judgment challenging the existence of two distinct tied products. The trial judge de-

nied this motion, holding that Hand had raised a genuine issue of fact as to the existence of a tying agreement.

Mohawk filed a renewed motion for summary judgment on January 26, 1984. This second motion was referred to a magistrate for a Report and Recommendation. Concluding, primarily under the rule of reason, that Mohawk lacked market power in the relevant tying product market to violate the Sherman Act, the magistrate recommended summary dismissal of Hand's complaint. Hand submitted timely objections to the Report and Recommendation complaining that the magistrate's analysis was defective in defining the relevant tying product market. He proffered evidence that the definition of the relevant tying product market under the rule of reason must include consideration of submarket criteria. Nevertheless, the district court adopted the Magistrate's Report and Recommendation without consideration on the record of Hand's objections and granted Mohawk's motion for summary judgment. Hand appeals from that judgment. After a thorough review of the record, we reverse and remand.

In April, 1973, Hand obtained employment with Mohawk to drive company-owned tractor-trailer trucks. In September of that year, Hand expressed a desire to purchase a tractor so that he could become what is known in the trucking industry as an "owner-operator". Hand asserts that prior to consummating any agreement to purchase a tractor, Mohawk impressed upon him that his employment as an owner-operator was conditioned upon financing the tractor with Mohawk. Thereafter on September 20, 1973, Hand purchased a tractor from Mohawk, financed entirely by Mohawk. Mohawk obtained a security interest in the tractor and executed a one-year owner-lessor lease agreement with Hand, mutually terminable on 30 days notice. This lease agreement was exclusive, requiring Hand to "haul freight only for Mohawk".

■ We must note preliminarily our standard of review in this matter. This court must apply the same test in reviewing the granting of a summary judgment motion that is utilized by the district court. *Glenway Industries, Inc. v. Wheelabrator-Frye, Inc.*, 686 F.2d 415, 417 (6th Cir.1982). In antitrust litigation, summary judgment is particularly disfavored and the standard for granting summary judgment is strict. *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir.1983); *Smith v. Northern Michigan Hospitals, Inc.*, 703 F.2d 942, 947 (6th Cir.1983); *Davis-Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1197 (6th Cir.1982), *cert. denied*, 466 U.S. 931, 104 S.Ct. 1718, 80 L.Ed.2d 190 (1984). The evidence must be viewed in a light most favorable to the party opposing the motion and that party must be given the benefit of all reasonable inferences. *Bouldis*, 711 F.2d at 1324; *Davis-Watkins Co.*, 686 F.2d at 1197. Only if the evidence is not disputed as to any genuine issue of material fact should the case be decided as a matter of law. *Bouldis*, 711 F.2d at 1324. Accordingly, our inquiry is limited solely to determining whether a genuine issue of material fact existed in the record below.

Market conduct of this type is generally analyzed under the rule of reason to determine whether the Sherman Act has been violated. This circuit in *Davis-Watkins Co.*, cited the definition of the rule of reason as follows:

The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition, or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint, and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be obtained, are all relevant facts.

686 F.2d at 1196, *quoting Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918).

■ For most alleged violations under the Sherman Act, rule of reason analysis requires a plaintiff to show anti-competitive market effect by the defendant's conduct. A defendant must have market power before its conduct can be shown to have an adverse effect on competition. *Davis-Watkins*, 686 F.2d at 1202.

■ The magistrate adopted a three-tier rule of reason analysis articulated in Justice O'Connor's concurring opinion in *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984), for a preliminary determination of whether tying two products poses a sufficient threat of economic harm under the antitrust laws. Those three elements are: (1) the seller must have power in the tying product market; (2) there must be a substantial threat that the tying seller will acquire market power in the tied-product market; and (3) there must be a coherent economic basis for treating the tying and tied products as distinct. *Id.* 104 S.Ct. at 1571–72 (O'Connor, J., concurring).

We find ourselves in agreement with the magistrate in adopting this test. This test presents a rational and systematic approach to analyzing the illegality of tying arrangements. We must, however, find that the magistrate's application of the first element in the test is defective.

■ The record before us shows that the magistrate went no further than analyzing the first element of the test—whether a defendant has power in the tying product market. Determining whether the defendants have market power over the tying products can only be accomplished by first defining the relevant market. It is apparent that the magistrate found the relevant market to be the tractor-trailer truck credit market of the entire Midwest region. Objections were submitted by Hand that the submarket of the defendants and all of their owner-operators was the relevant market for analysis. Hand supported his objections with an affidavit of an expert witness who proffered that the tying arrangement at issue restricted competition in that submarket. From our review of the record, it cannot be shown that the district court even considered these objections before adopting the Magistrate's Report and Recommendation. Without discussing the substance or merit of Hand's objections, it is clear that, as a matter of law, submarket analysis, if not a substitute for the standard market test, is a factor to be considered in defining the relevant market. *White and White, Inc. v. American Hospital Supply Corp.*, 723 F.2d 495, 500 (6th Cir.1983); *Borden, Inc. v. Federal Trade Commission*, 674 F.2d 498, 510 (6th Cir. 1982), *vacated and remanded on other grounds*, 461 U.S. 940, 103 S.Ct. 2115, 77 L.Ed.2d 1298 (1983).

■ The motion for summary judgment in this case was granted because the magistrate found under the rule of reason that the defendants did not have market power over the tying product involved. It is not the province of the district court on summary judgment to balance or ignore evidence submitted by either party, unless that evidence as a matter of law is without basis. At the very least, the proffered evidence of the submarket raises an issue of material fact not appropriate for summary adjudication. In this light, it would be premature for us to review any remaining factual or legal conclusions made by the magistrate following the defective analysis of the threshold element in the rule of reason.

Accordingly, the judgment of the district court is **REVERSED** and the case **REMANDED** for proceedings consistent with this opinion.