822 F.2d 59
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
KINGHAVEN FARMS LIMITED, an Ontario, Canada Corporation,
Plaintiff-Appellant
v.
ESTATE OF Maxwell H. GLUCK d/b/a/ Elmendorf Farm; Elmendorf
Farms, Inc.; Leonard Marx, Sr.; Donald Reifler; and Muriel
Gluck as Co-Executors of the Estate of Maxwell H. Gluck
d/b/a Elmendorf Farm; and Jack Kent Cooke, Individually;
Jack Cooke Incorporated; Leonard Marx, Sr.; Donald Reifler
and Muriel Gluck, Individually, Defendants-Appellees.
 No. 86-5662
 United States Court of Appeals, Sixth Circuit.
 July 1, 1987.
 
 Before JONES and NORRIS, Circuit Judges, and COOK, District Court Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Kinghaven Farms Ltd. (Kinghaven) appeals from summary judgment for the defendants Estate of Gluck (estate), its executors, and the Cooke defendants (referred to collectively as Cooke), dismissing Kinghaven's breach of contract and tort action. Kentucky law controls. We affirm for the reasons set forth in the district court opinion.
 
 
 2
 Maxwell Gluck, owner and operator of the historic Elmendorf Farm (a world famous horse farm just north of Lexington, Kentucky), died in November 1984. Because operating a horse breeding business of this calibre is a highly complex matter requiring years of experience, the executors of the estate, Mrs. Gluck and two longtime financial advisers of the decedent, decided to sell the farm and its assets as quickly as possible. The testimony indicates that they wanted to sell it by the end of the 1984 calendar year for tax reasons and because the new owner would want to make crucial breeding decisions in January. 'Feeler' communications were sent out to prospective purchasers, some of whom had expressed an interest in the farm during the decedent's lifetime. Kinghaven and Cooke were among the persons contacted. The executors decided to conduct in-person negotiations with different purchasers on consecutive days in New York in early to mid-December.
 
 
 3
 The negotiations between the estate's representatives and Kinghaven's representatives and counsel took place as scheduled on December 11, 1984, in New York. The Kinghaven representatives were apparently uninterested in engaging in revolving negotiations in competition with other prospective purchasers and suggested that a 'sealed bid' procedure be implemented. The executors of the estate agreed and the group spent the next three hours negotiating the form of the 'Instructions to Bidders' to be given to all potential bidders. In final form, the instructions are a one-page document describing the assets to be sold generally, the terms of the bids (100% cash), and other miscellaneous points related to the bidding procedure. See App. 56. Point 10 of the instructions states: 'Owner reserves the right to reject all bids as inadequate.' The district court stated that it was an uncontested fact that an executor of the estate insisted on the language: 'Owner reserves the right to reject any and all bids'; but that counsel for plaintiff changed it by deleting 'any and' and including 'as inadequate.' The executor agreed to this change.
 
 
 4
 Kinghaven argues strenuously that there were additional oral promises made by the estate during the December 11 negotiations, in addition to those contained in the written Instructions to Bidders. Kinghaven identifies in various depositions six specific promises made by the estate: (1) that there would be no auction or de facto auction of the Elmendorf Farm; (2) that there would be no competition of bidders, which would exclude: (3) shuttling back and forth between bidders, thereby giving one or the other 'a second kick at the cat,' and (4) 'sharp bids' whereby one party could offer a certain sum higher than the next highest bidder; (5) that Kinghaven's bid would remain confidential; and (6) that the highest sealed bid within the range of 'adequacy' (agreed by the parties to be no less than $40,000,000) would be accepted by the estate. Unfortunately, none of these 'promises' were incorporated into the written Instructions to Bidders.
 
 
 5
 The bids were opened in New York on December 14, 1984. Three bids had been submitted: one by Kinghaven, one by Cooke, and one by a California interest, Sahadi. The executors opened the three in the presence of the bidders and then retired briefly to a back room. When they returned, they told Kinghaven and Sahadi that their bids were unsuccessful. After the losing bidders left the offices, the executors informed Cooke that its bid was unacceptable in the present form. It was later revealed that Sahadi had bid less than $40,000,000, Kinghaven had bid $43,111,000 in cash, and Cooke had bid '$212,000 higher than the highest bid,' with the reservation of right to retract its bid if accepted. The executors gave Cooke a copy of Kinghaven's bid and told them to use that form but to insert Cooke's name in place of Kinghaven's and to increase the offer price to $43,323,000.
 
 
 6
 The sale of Elmendorf Farm to Cooke was ultimately closed on December 28, 1984. For reasons not relevant here, the final sale price had been adjusted downward slightly. On December 24, prior to the closing, Kinghaven's counsel delivered a letter notice to the estate and to Cooke in which Kinghaven claimed its right to the Elmendorf Farm and put the seller and purchaser on notice that it intended to take legal action to protect that right.
 
 
 7
 Kinghaven filed a complaint on the contract seeking specific performance in Kentucky state court that December. Suit was removed by the defendants to federal court on December 28. Kinghaven's second amended complaint in federal court stated causes of action in breach of contract, promissory and equitable estoppel, fraud, and constructive fraud. Both equitable and damage relief were requested. On cross-motions for summary judgment--all parties insisting that there were no disputed issues of material fact--the district court granted summary judgment against the plaintiff on all counts and dismissed the complaint.
 
 
 8
 The appellate court applies the same test as used by the district court in reviewing a motion for summary judgment. Hand v. Central Transport, Inc., 779 F.2d 8, 10 (6th Cir. 1985) (per curiam). Accordingly, where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the file, construed favorably to the nonmoving party, do not raise a genuinely disputed issue of material fact for trial, the entry of summary judgment is appropriate. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2555 (1986).
 
 
 9
 The ultimate issue in this case is whether Kinghaven and the estate had an enforceable agreement to sell the Elmendorf Farm to Kinghaven. It is Kinghaven's contention that they had such an agreement because the estate had irrevocably offered to sell the farm to the highest conforming bidder in the December 14th sealed bid procedure. Kinghaven argues that it was the only conforming bidder since sharp bids (Cooke) and bids under $40,000,000 (Sahadi) did not conform and were unacceptable under the oral agreement of December 11. The question really comes down to whether the solicitation of bids was with reserve (in which case it was not a binding offer), or without reserve (in which case it was a binding offer to accept conforming bids, and Kinghaven's bid would have acted as an acceptance).
 
 
 10
 The general rule, followed by Kentucky courts, is that 'a notice inviting bids does not constitute an offer but merely a solicitation of offers, which does not impose any contractual obligations.' Ohio River Conversions, Inc. v. City of Owensboro, 663 S.W.2d 759, 761 (Ky. App. 1984); see also Restatement (Second) of Contracts Sec. 28, comment c (1981). It is also the general rule that requests for bids are governed by the same rules governing auction sales. Chevalier v. Town of Sanford, 475 A.2d 1148 (Me. 1984); 1 Williston on Contracts Sec. 31 (3d ed. 1957). The law as to auctions is set forth in Kentucky's version of the Uniform Commercial Code, which states that a 'sale is with reserve unless the goods are in explicit terms put up without reserve.' Ky. Rev. Stat. Ann. Sec. 355.2-328(3) (Baldwin 1985).
 
 
 11
 It is clear that the Instructions to Bidders, under any rational reading, does not make the sale without reserve 'in explicit terms.' Paragraph 10's reservation to the owners the right to reject all bids as inadequate, standing alone, fails miserably under this test. The document is the sole written expression of the seller's intent, the sole written expression of the agreement between Kinghaven and the estate, and the only information provided to the other two bidders. This is exactly the type of situation which justifies the legal presumption that such sales are with reserve.
 
 
 12
 Kinghaven argues on appeal, as it did below, that the true agreement that it had with the estate was only partially evidenced in the Instructions to Bidders. It contends that the full agreement was the writing and the oral promises. When all of the agreements are considered together, Kinghaven maintains, it is clear that the estate reserved only the limited right to reject all bids under $40,000,000, and was required to accept the highest sum certain bid over that amount. The estate's discretion to reject conforming bids within the range of adequacy allegedly was bargained away in these oral agreements. Kinghaven posits that it would not have expended the time and energy to submit a bid at all if these promises had not been made.
 
 
 13
 Kinghaven further argues that the law of a presumption of sale with reserve does not apply because the parties agreed that the sale would not be conducted as an auction or a de facto auction. The problem with this argument is that while it is one thing to say that the parties can agree to the nature of the laws controlling the contractual relationship between them, it is quite another to say that the alleged terms of this secret oral agreement govern a sale involving other bidders. The statutory requirement that the notice that the sale is without reserve, or with limited reserve, be in explicit terms satisfies an important policy objective. All bidders should have the same knowledge of the terms of the offering; and if a particular offering is to be without reserve (the exception to the rule), then all should be explicitly notified. As we have already explained, it is clear that the written Instructions to Bidders did not explicitly make this offering without reserve.
 
 
 14
 The district court's conclusion that the estate's solicitation of bids for Elmendorf Farms was with reserve was, for reasons adequately explained in that court's opinion, the cornerstone of the summary judgment. We determined that this conclusion was warranted by the uncontested facts of the case considered in light of Kentucky law. We have closely examined appellant's various other arguments and find them all lacking in merit. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Julian A. Cook, United States District Judge for the Eastern District of Michigan, sitting by designation