898 F.2d 154
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Beril HOOSIER, Plaintiff-Appellant,
v.
Bobby H. HARDEN, Defendant-Appellee.
 Nos. 89-5706, 89-5707.
 United States Court of Appeals, Sixth Circuit.
 March 13, 1990.
 
 Before WELLFORD and RALPH B. GUY, Jr., Circuit Judges, and ENGEL, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 Plaintiff Beril Hoosier, a rural farmer, sued defendant, Bobby H. Harden, as an "acting policeman of the Taylor County (Kentucky) Metro Police Department" under 42 U.S.C. Sec. 1983, charging him with an intentional, illegal, malicious, and wrongful "detention, search and arrest" under color of state law. Specifically, Hoosier charged Harden with obtaining a warrant of arrest for him for manufacturing 27 plants of marijuana which were observed and found growing on government-owned land in Taylor County. Hoosier charged Harden with failure to exercise care "to learn the correct identity of the owner, lessee, or possessor of the property upon which the marijuana was allegedly found." Plaintiff also sued the County Judge-Executive but does not appeal from the grant of summary judgment to that official. He does appeal from the summary judgment granted defendant Harden. We reverse.
 
 
 2
 Defendant responded to the complaint with a general denial (except for issuance of an arrest warrant for defendant by a state judge) and also asserted the "affirmative defense" of qualified immunity. Hoosier asserts that there is a genuine issue of material fact that precludes the grant of summary judgment. The factual dispute relates to the content of a conversation between the parties in the vicinity of the courthouse after aerial surveillance had located marijuana on federal land. Defendant testified that three patches of marijuana were observed.
 
 
 3
 Harden testified that the government leased out the land in question along Stoner Creek but that he was "not sure who is the lessee." (Indeed he was not sure whether the federal or the state government leased out the land.) He was of the view that the part of the field with corn had been sprayed but the part containing the marijuana had not, so that there were weeds around the area where the marijuana was growing amidst the corn. In sum, defendant Harden felt the marijuana was planted with an effort to conceal it.
 
 
 4
 In carrying out his investigation, as Harden testified in a discovery deposition, across from the courthouse Hoosier approached him and stated, "I hear you found some marijuana on me." Defendant stated that he responded, "I don't know if I did or not. Do you have any corn up there?" Harden said Hoosier replied that he did have corn in the area "from 76 to Acton." Harden said he made no further investigation who owned or farmed the land[1] in the rural and remote area near Stoner Creek where the marijuana was found. Harden said he relied entirely on discovery of the marijuana and what Hoosier said about where he had corn planted to make his formal complaint. Based on this asserted information, Harden obtained from Judge George an arrest warrant which stated that Hoosier was charged with manufacturing marijuana "in his corn field on Stoner Creek" in violation of Kentucky law.
 
 
 5
 Harden testified that he knew Hoosier as a local resident and had previously served a warrant on him. Harden and another law enforcement officer actually served the arrest warrant currently at issue at Hoosier's home. Harden could not recall the comments then made to him by plaintiff, but he acknowledged that plaintiff had taken a polygraph test concerning this affair. Based on the testimony of the parties the grand jury declined to return an indictment, and subsequently, on a second presentment, the result was the same.
 
 
 6
 After obtaining the warrant, defendant learned that one Glyn Abston helped Hoosier plant corn in the Stoner Creek area, and several months after serving the warrant Abston allegedly was present when Hoosier harvested the corn. Harden summarized: "It was my impression that the corn that was in that cornfield was Mr. Beril Hoosier's." He conceded, however, that he had no document or statement from anyone, including the government, that Hoosier had any lease along Stoner Creek or in that area. He later found evidence that the Commonwealth of Kentucky had a lease with Dennis Campbell II[2] in the Robinson Creek area ("probably" in the same area as Stoner Creek).
 
 
 7
 Hoosier's version of the crucial conversation with Harden was quite different: that he observed, "Bobby, I heard you found some marijuana on government ground", and that Harden responded affirmatively. He denied saying anything about owning or growing corn on any land in question on which marijuana was found, but clarified later that he "had corn from Elk Horn to Action ... not on Stoner Creek." He later confirmed he had interests in the Robinson Creek area and was interested in learning about discovery of marijuana, because a friend and neighbor had told him a deputy had been injured in jumping from a helicopter in locating marijuana on government land.
 
 
 8
 Hoosier also testified in his deposition that when arrested he asked Harden why he was being arrested and that the response was for growing marijuana on Stoner Creek. Hoosier testified further that he protested--"Bobby that's not mine, ... I haven't been in my corn since I planted it." He averred that Harden responded that Hoosier needed to check his corn. He stated that Harden refused to take him to the place where the marijuana was found. Hoosier also testified that in 1985 he had two operations and had just been in the hospital before his brief (and disputed) initial conversation with Harden. He admitted in his deposition that he had been farming about 500 acres that year, but had no interest in the land or crop on which the marijuana was found. No other person was arrested in connection with the marijuana.
 
 
 9
 In reviewing the district court's grant of summary judgment, we must determine if there is any genuine issue of material fact such that a jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Yancey v. Carroll County, Ky., 876 F.2d 1238, 1242 (6th Cir.1989).
 
 
 10
 The district court, in granting summary judgment, found "no genuine issue of fact bearing on the question of whether a reasonable police officer would have believed that probable cause existed for the arrest of the plaintiff...." The court noted the conflicting versions of the September 16 conversation between Hoosier and Harden, but found "other substantial evidence" that would support Harden's determination that probable cause existed.
 
 
 11
 Specifically, the court relied on the following information:
 
 
 12
 1. Land where marijuana was found was worked by Hoosier and Campbell in a joint venture;
 
 
 13
 2. A third party told Harden that Hoosier participated in farming that field; and
 
 
 14
 3. Evidence indicated that whoever grew the corn also grew the marijuana.
 
 
 15
 In the district court's factfinding process, we normally do not set aside factual predicates or findings unless clearly erroneous. On the other hand, if there exists a "genuine issue as to any material fact", a moving party is not entitled to summary judgment. Fed.R.Civ.Proc. 56(c). We are persuaded that in this case there remains a genuine issue of material fact with respect to the issue of probable cause, and to the claim of qualified immunity. Summary judgment for the defendant was therefore inappropriate. The underlying question here is whether there was probable cause for defendant to charge plaintiff at the time he applied for the arrest warrant, not in the light of subsequent discovery and hindsight on the part of either party.
 
 
 16
 We focus "on the objective legal reasonableness of an official's acts" when he claims the defense of qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). What would have been required of a reasonable police officer to determine reasonable cause to secure an arrest warrant for Hoosier? Harden is not protected here by the fact that a state judge issued a search warrant, because a vital component of the information furnished the issuing magistrate was an alleged--and seriously contested--oral communication between the charging officer and the accused. See United States v. Baxter, 889 F.2d 731 (6th Cir.1989).
 
 
 17
 The district court found that the land where the marijuana was found was worked by Hoosier and Campbell. The only basis for Harden's knowledge of this, at the time of seeking the warrant, was his "understanding" to that effect. But this "understanding" came from later information, not from what Hoosier initially purportedly admitted that he, Hoosier, "said it was his." (Dep. p. 38). We find this basis for probable cause, the joint venture with Campbell, who was never charged, to be unavailing under the circumstances. It was not a corroborating factor despite the finding by the district court.
 
 
 18
 Next the district court found that a third party, perhaps Deputy Cochran, told Harden of Hoosier's participation. Harden alluded to this in passing but conceded:
 
 
 19
 Q: Did that conversation actually go into your decision to fill out that affidavit and request the warrant against Beril Hoosier?
 
 
 20
 A: No, sir, the evidence that I gathered at the time I was there and Mr. Hoosier coming to me, that's when I went to the County Attorney and advised him what I had.
 
 
 21
 The "evidence gathered" was the finding of the 27 marijuana plants. This, then, was not a corroborating factor either. Cochran was apparently available but did not testify.
 
 
 22
 The third item of "substantial evidence" relied upon by the district court, that "whoever grew the corn also grew the marijuana" is not seriously contested. It was a proper inference upon which defendant might reasonably act as an objectively reasonable police officer. This factor, however, as herein pointed out, still does not connect up with Hoosier unless one accepts Harden's contested version of the brief conversation with Hoosier. A reasonable police officer, moreover, would have pursued at least some minimal investigation to have tied Harden to the planting of the corn on the land in question. The fact that the grand jury refused to find probable cause to believe Hoosier guilty of the offense, even after further investigation was pursued, is some indication (1) that the content of the conversation was a material issue, and (2) that whether there was probable cause to believe that Hoosier was involved in the corn and land in question was doubtful.
 
 
 23
 Our standard of review on the grant of summary judgment is de novo, and our role is similar to that of the district court in reviewing the pertinent facts as a basis of a legal conclusion on the question of qualified immunity. Pinney Dock & Transport Co. v. Penn Central Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 109 S.Ct. 196 (1988); Hand v. Central Transport, Inc., 779 F.2d 8, 10 (6th Cir.1985) (per curiam). We have analyzed several of the factual bases for the district court's grant of summary judgment and find them insufficient and/or erroneous as a predicate for the legal result reached. We also conclude that there was a genuine issue of material fact involved that precludes summary judgment. Although the Supreme Court was dealing in a different context in construing materiality in Kungys v. United States, 485 U.S. 759 (1988), we find the language analogous to the problem of a "material fact" in this case:
 
 
 24
 [A]lthough the materiality of a statement rests upon a factual evidentiary showing, the ultimate finding of materiality turns on an interpretation of substantive law. Since it is the court's responsibility to interpret the substantive law, we believe [it is proper to treat] the issue of materiality as a legal question.
 
 
 25
 Id. at 772, quoting United States v. Abadi, 706 F.2d 178, 180 (6th Cir.), cert. denied, 464 U.S. 821 (1983).
 
 
 26
 For the reasons indicated, we REVERSE and REMAND for further proceedings in this case consistent with the views expressed herein.
 
 
 
 [1]
 Harden did say that "maybe James Cochran, [a deputy sheriff] told me that they thought that [the corn] belonged to Beril Hoosier. But I can't say for sure. I don't remember." This would not constitute, in our view, any independent evidence about Hoosier's alleged participation in planting or growing the marijuana in question. There was no corroboration of any such remark by Deputy Cochran or anyone else. Harden conceded he did not act on this purported "maybe" statement
 
 
 [2]
 Dennis Campbell, Sr. was married to Mr. Hoosier's wife's daughter. Harden said he thought Hoosier and Campbell farmed together