[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is brought by the plaintiff. Neil Silberkleit who alleges that health insurance coverage was canceled by his carrier, Mega Life and Health Insurance Co., because of the negligence of the defendants, Dr. Juan Hernandez and Dr. Steven Spear.
The defendant, Mega Life and Health Insurance Co., has settled the claims which the defendant had against them.
The allegation against the two defendant doctors consists of a claim that they, in disclosing their records relating to the plaintiff, disclosed that he had been examined by Dr. Hernandez which examination disclosed that he had been treated and diagnosed with having a recurrent parotid tumor and that surgery was recommended. The plaintiff claims that he was not informed by Dr. Hernandez that the tumor had recurred and that surgery was recommended.
After surgery, the plaintiff presented a claim to Mega Life for coverage. The claim was denied and the policy canceled. The basis for the cancellation was that the plaintiff on his application for insurance failed to disclose a past history of a parotid tumor. His medical history and records disclosed that he had a parotidectomy in 1954 at St. Agnes Hospital in White Plains, New York.
Initially, the plaintiff visited Dr. Hernandez because of lumps on his neck. He was not recommended to him by anyone in particular but did have previous contact when he treated his son for recurring earaches. After the initial office visit, the CT Page 4193 doctor recommended that he have a CAT scan of his neck and that it would be necessary for him to obtain the medical records from St. Agnes Hospital where a parotidectomy had been performed previously in 1954.
On April 11, 1988, he returned to the doctor's office after having had a scan of his neck and the receipt by Dr. Hernandez of the records of St. Agnes Hospital. It was his impression of that visit that Hernandez made no recommendation of surgery. He alleges that he specifically asked if surgery was necessary and the answer was "No". If surgery had been recommended, he contends that he would have had the operation back in 1988.
In a letter to Dr. Edelman and Dr. Spear dated April 11, 1988, Dr. Hernandez indicates that the plaintiff was suffering from a recurrent mixed tumor; that he advised the patient to undergo a parotidectomy; that the patient understood; that the patient asked if there was any immediacy; and the doctor's response was no, due to the fact a previous parotidectomy had occurred in 1954 and it might take some more time to grow.
Subsequently, he became concerned about the lumps on his neck which had bothered him for some time, causing him to make a visit to Dr. Hernandez in September of 1991. At this time, he was informed by the doctor that surgery was indicated and at that time a parotidectomy was recommended.
Having heard Dr. Herandez's recommendation, Mr. Silberkleit was interested in an alternative to normal surgery. He visited a Dr. Hirokowa, who ultimately performed the surgery. Prior to the operation, a preoperative exam was performed by the defendant, Dr. Spear. It was at this time that he observed in Dr. Spear's file the April 11, 1988 letter recommending surgery. He was concerned about this and requested a copy of the letter from Dr. Spear, who told him that if he wished a copy of the letter, that he should obtain one from Dr. Hernandez. There is no evidence that he ever made such a request. In fact, the evidence is otherwise.
He ultimately had the surgery and it was subsequently that problems arose regarding his health insurance coverage. Prior to the operation, Mr. Silberkleit had changed health insurance carriers in an attempt to reduce his health insurance costs. He obtained health insurance from Meg Life and Health Insurance Co. This was a catastrophic type of insurance coverage at a lower CT Page 4194 rate but with less coverage. In reviewing his claim for benefits after the operation, he was informed on May 13, 1992 "that significant medical history was omitted from his application." His carrier alleged that, following a review of the records that were requested and received by them, it was established that there was a past history of recurrent parotid tumor which he failed to disclose.
The plaintiff, in his application for insurance, made no mention of a past history of a parotid tumor. It should be noted that there were several other non-disclosures by the plaintiff.
The April 11, 1988 letter from Hernandez to Spear was a part of the medical records submitted by both Hernandez and Spear to Mega Life. The information contained therein was primarily the basis for the cancellation of the policy. Mr. Silberkleit's contends that he was never informed of the need for surgery and that, had he been so informed, he would have had the surgery in 1988 at which time he did have appropriate health insurance.
The plaintiff in his complaint has alleged a breach of contract against both defendants. In his brief, he has abandoned the breach of contract claims and therefore the court will not consider them.
The remaining claims against both defendants rests in negligence. It is the position of both defendants that these claims are barred due to the plaintiffs's failure to file a good faith certificate as required by Conn. General Statutes § 52-190a(a). Plaintiffs complaint contains no such certificate. In ruling upon motions to strike, based on the absence of any such certificate, Judges Jones and Rush denied the motions to strike ruling that such certificate was unnecessary under the facts as alleged. The position of the defendants regarding these rulings brings into play the doctrine of the law of the case.
"The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be involved. In essence, it expresses the practice of judges generally to refuse to reopen what has already been decided and is not a limitation of their power. Law of the case should apply unless there are unusual circumstances or a compelling reason that would render the doctrine inapplicable. These include (1) substantial new evidence introduced after the first review, (2) a decision of the Supreme CT Page 4195 Court after the first review that is inconsistent with the decision on that review, and (3) a conviction on the part of the second reviewing court that the decision of the first was clearly erroneous." Pagano v. Board of Education, 4 Conn. App. 1 (Internal citations, internal italics omitted). Based on t his criteria, the court finds no unusual circumstances or compelling reasons for the decisions of an earlier court to be reversed. Therefore, the rulings made by Jones, J. And Rush, J. shall remain the law of the case.
First, let us consider the case against Dr. Spear. As a result of the plaintiff withdrawing his claim of a violation of contract against Dr. Spear, the only count remaining is the fourth count alleging negligence. It is the plaintiff's claim that Dr. Spear owed him a duty to convey to him information as to his medical condition in that he negligently failed to communicate to the plaintiff an alleged recommendation of surgery and that he failed to record the recommendation in the plaintiff's medical chart.
The duty complained of is the alleged duty to convey to the plaintiff the contents of the April 11, 1988 letter with its diagnosis of a mixed recurrent tumor and the recommendation for surgery contained therein.
The evidence brought out at the trial indicated that the plaintiff never considered Dr. Spear as his doctor relating to any tumor he might have had. He saw Dr. Spear for various other unrelated acute problems and, except for the final pre-operative visit, at no time was the treatment of any tumor considered. The plaintiff's first visit to Dr. Spear was on May 22, 1989. At that time, the plaintiff was complaining of a sore throat and bronchial congestion. A return follow-up visit occurred on June 6, 1989. His next visit to Dr. Spear occurred on August 18, 1989 with a complaint of rectal bleeding. The diagnosis was hemorrhoids. In September of 1989, a sigmoidoscopy was performed. On October 27, 1989, a visit was made to Dr. Spear with problems relating to hypertension and accompanying dietary concerns. His final visit to Dr. Spear occurred on October 21, 1991, approximately two years later. At no time was the plaintiff, Mr. Silberkleit, treated by the defendant Dr. Spear for any tumor. Mr. Silberkleit's testimony was that he did not consider Dr. Spear as his doctor in relation to any tumor. The testimony of both the plaintiff Silberkleit and the defendant Dr. Spear is consistent. Neither recollects any discussion relating to a CT Page 4196 parotid tumor or Dr. Hernandez' letter addressed to Dr. Spear. The only discussion concerning the letter was at the October 1991 visit and that discussion was limited to the plaintiff's desire to get a copy of the same.
While the letter itself is addressed to Dr. Spear, it should be noted that the plaintiff's first visit to Dr. Spear was on May 22, 1989 while the letter complained of is dated April 11, 1988, more than on year earlier. It was acknowledged by everyone that Dr. Spear's first contact with Mr. Silberkleit was the May 22, 1989 date, a year after his visit with Dr. Hernandez on April 11, 1988.
As far as the cancellation of the policy by Mega Life and Health Insurance Co. is concerned, the medical records which included the letter of April 11, 1988 were turned over pursuant to Mr. Silberkleit's authorization to release his medical records. It was only subsequent to this that his health insurance policy was rescinded.
The court finds that the plaintiff's claim as set forth in his fourth count has not been established by a preponderance of the proof and therefore judgment may enter for the defendant, Dr. Spear.
The remaining counts relate to the plaintiff's claims against the defendant, Dr. Hernandez. The sixth count rests in negligence; the seventh in contract; and the eighth count in fraud. As previously indicated, the breach of contract claim has been abandoned by the plaintiff.
As for the sixth count, the plaintiff acknowledges in his brief that whatever occurred at the April 11, 1988 office visit to the defendant, Dr. Hernandez, is dispositive of the issues before the court. In his post-trial Memorandum of Law, plaintiff's counsel makes the following statement. "If the court believes that the defendant Hernandez told the plaintiff that his parotid tumor had recurred and surgery was indicated at that time, the court should and will rule against the plaintiff on the issue of liability. If, however, the court believes that the defendant Hernandez did not tell the plaintiff that the parotid tumor had recurred but that he (the plaintiff) should check the cysts and if they increased in size to return at that time for a re-examination, then the court must rule in favor of the plaintiff on the issue of liability." What occurred on that date, CT Page 4197 April 11, 1988, in the office of the defendant, Dr. Hernandez, will decide all of the issues remaining before the court.
Mr. Silberkleit became aware of Dr. Hernandez as a result of a visit by his son who was treated for earaches. Subsequently, on December 8, 1987, he himself, in the company of his wife, came to see Dr. Hernandez because of a concern for some lumps on his neck and behind his left ear. Having had a parotidectomy in 1974 and the fact that the lumps had been present for some six or eight months caused this concern. He was advised by Dr. Hernandez to undergo a scan of the neck. The doctor also indicated a desire to review the records of the previous parotidectomy. After receipt of the records of the previous surgery, another office appointment was arranged for April 11, 1988.
Both sides agree that the issue before the court is a factual one; that what occurred during this visit controls the court's disposition. It is the allegation of the plaintiff that he was never told during that visit that the tumor had recurred and that surgery would be necessary while the defendant, Dr. Hernandez, alleges that the letter of April 11, 1988 depicts correctly what happened during Mr. Silberkleit's visit; that he was informed of the need for surgery; that he was reluctant to undergo the operation; that, in view of the long space of time that had elapsed since the original operation he informed him that surgery was not immediate but that he should watch the lumps on his neck and if there was any change to see the doctor immediately.
The weight which the court gives to the testimony of Mr. Silberkleit as opposed to the weight the court gives to the testimony of Dr. Hernandez is what will dispose of the matter. While the plaintiff's wife accompanied him to the doctor's office, she in her testimony states that, while she heard nothing about any surgery or the recurrence of any tumor, she was not present during any actual examination.
In weighing the credibility of the plaintiff Silberkleit's testimony, the court must consider his answers on his application to Mega Health and Life Insurance Company. The application for health insurance contains the following: "IT IS AGREED: 1) all statements and answers in this application . . . are complete and true to the best of my (our) knowledge and belief and this application shall be the basis of any insurance issued."
Numerous answers to questions relating to plaintiff CT Page 4198 Silberkleit's medical history are inaccurate.
Question 17(e) asks the following:
 "Has any person to be insured EVER had symptoms or been treated for cancer, cyst, tumor or neoplasm?"
Plaintiff's answer was "no" even though he had previously had surgery for a parotid tumor and had recently seen Dr. Hernandez concerned over the lumps on his neck.
 Question 17(I) inquired whether he had ever had symptoms or been treated for
"(I) Hernia, hemorrhoids. polyps or disorder?"
His answer was "no" even though he had recently seen Dr. Spear who diagnosed him with having hemorrhoids and in fact had performed a sigmoidoscopy.
Question 18(a) asked for the last time each family member visited a doctor. His response was "(1) 1990 Neil, physical". In fact, the visit noted was to a part-medic. He at no time mentions his visits to either Dr. Spear or Dr. Hernandez.
It is obvious that the plaintiff is a man of average or above average intelligence. Nevertheless, there are several questions that have been answered untruthfully or, at best, inaccurately. In assessing the credibility of the various witnesses, the court must give substantial consideration to the application for insurance and its various answers which have been proven to be inaccurate.
On the other side of the issue, in considering the testimony of Dr. Hernandez, one must take into consideration that he is a surgeon specializing in this type of surgery. If someone needed surgery it would be in his best interests to say so.
"The burden of persuasion in an ordinary civil case is met if the evidence induces a reasonable belief that it is more probable than not that the fact in issue is true. This is the common preponderance of the evidence standard." Clark v. Drska, 1 Conn. App. 481,485.
On both the negligence and fraud counts, the party who has CT Page 4199 the burden of proof must meet that burden by a fair preponderance of the evidence, that is, by the better or the weightier evidence. Piascik v. Railway Express Agency Inc., 119 Conn. 277,278.
The plaintiff has not, by a preponderance of the evidence, established his case. Judgment may enter for the defendant, Dr. Hernandez.
The Court
Curran, J.